# KNICKERBOCKER LIFE INSURANCE COMPANY *v.* PENDLETON & Others.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TENNESSEE.

Argued October 22, 1885.—Decided November 16, 1885.

After final judgment in this case at the last term reversing the judgment below (see 112 U. S. 696), the court discovered that the writ of error was sued out and citation directed and served against P. H. Pendleton, only one of the plaintiffs below ; that the preliminary appeal bond was made to him alone; but that the supersedeas bond was executed to all the plaintiffs below, and that all subsequent proceedings were entitled in the name of P. H. Pendleton & als. After notice to plaintiff in error to show cause, the court allowed the writ of error to be amended, set aside the judgment, ordered a new citation to be issued to all the plaintiffs below, and directed a reargument.

On the rehearing the court adhere to the views expressed in the former opinion.

On an issue whether demand of payment of a draft had been waived by the payees in order that they might communicate with the drawer, evidence of the custom and usage of the bank holding it, if offered in support of evidence (not objected to) of the cashier of the bank of his conviction and belief (founded on such custom and usage) that the draft had been so presented, comes within the rule which allows usage and the course of business to be shown for the purpose of raising a *prima facie* presumption of fact, in aid of collateral testimony: and, taken together, they are sufficient to be presented to the jury.

The facts are stated in the opinion of the court.

*Mr. James A. Dennison* [*Mr. Leslie W. Russell* also filed a brief] for plaintiff in error.

*Mr. L. W. Humes* and *Mr. D. H. Poston* [*Mr. W. K. Poston* was with them on the brief] for defendants in error.

Mr. Justice Bradley delivered the opinion of the court.

The judgment rendered in this case on the 5th of January last (see opinion, 112 U. S. 696) was set aside on the last day of the last term, and the cause was restored to the docket for reargument at the present term. The original action was brought by several joint plaintiffs, minors and children of Samuel H. Pendleton, deceased, against the Knickerbocker Life Insurance Company, on a policy of insurance on the life of said Samuel, taken out by him for the benefit of his said children; and judgment was rendered for the plaintiffs, some of whom had, in the mean time, come of age. The writ of error in this case was brought to reverse this judgment, and a judgment of reversal was pronounced on the 5th of January last. It was subsequently discovered by the court (a fact not noticed by any of the counsel) that the writ of error was sued out, and the citation was directed and served, against only one of the plaintiffs below, to wit, P. H. Pendleton. The preliminary appeal bond for costs was also made to P. H. Pendleton alone; but the bond for supersedeas, subsequently executed, was made to all the plaintiffs by name, and the subsequent proceedings were generally entitled in the name of P. H. Pendleton & als. This court, in view of the defect in the

writ of error, entered a rule on the plaintiff in error to show cause why the judgment previously rendered should not be vacated and the writ of error dismissed. On consideration of the special circumstances of the case, we allowed the writ to be amended, and a new citation to be issued to all the plaintiffs below, set aside our previous judgment, and directed the cause to be restored to the docket for reargument.

The case has now been reargued, all the parties being represented. We do not find occasion, however, to render a different decision from our former one. The only question which we have deemed it necessary to consider more fully, being more fully discussed by counsel than before, is, whether the evidence adduced to show a presentment of the draft in question for payment was sufficient to be submitted to the jury. The defendants in error now strenuously contend that it was not. It will be remembered that the draft was dated July 14, 1871, and was payable three months after date without grace, and contained a condition that if not paid at maturity the policy should become void. We held that if the insurance company wished to avail itself of this condition, it must present the draft for payment at its maturity, but that protest for non-payment was not necessary.

On the trial, which took place nearly ten years after the transactions referred to, it was shown that about three weeks before the maturity of the draft, it was sent from Memphis by the Union and Planters' Bank to the Louisiana National Bank at New Orleans, to be presented for acceptance, with directions not to have it protested; that the latter bank did so present it to the drawees, Moses Greenwood & Son, and that it was not accepted by them; that it was then returned to the Memphis bank, which, about the 5th of October, again sent it to the New Orleans bank for demand of payment. Luria, the cashier of the latter bank, was examined on interrogatories. After stating the facts relating to the presentment of the draft for acceptance, and the usage and custom of his bank with regard to the presentment of bills and notes for acceptance and payment, he was asked this question: "From your examination of the indorsements upon the draft" (which was exhibited to

him), "in connection with your knowledge of the course of business of the Louisiana National Bank, as stated by you, would you say whether or no said paper has been presented for acceptance and payment as other commercial paper sent to you for collection through your corresponding banks?" To which he answered: "Yes, it was presented for acceptance and for payment, as in all similar cases [of] paper sent to us for collection, which is the custom on the part of the Louisiana National Bank in giving prompt attention to all business intrusted to its care."

It was not pretended that the draft was paid.

The witness being asked, on cross-examination, if he knew, of his own knowledge, that said draft was presented for either acceptance or payment, he answered: "Yes, for both, from the fact that the rules of the bank make it necessary, in the ordinary course of business, to present both for acceptance and payment." Being asked if he presented the bill in person, or was present, he said: "No, for the reason that, as cashier of the bank, it is not my duty to present drafts either for acceptance or payment." He also stated that it was the custom of the bank to give notice to drawees of time drafts of the maturity of the same; and that the drawees, in this case, Moses Greenwood & Son, had a regular business office in the city of New Orleans. Luria further testified that the bill was entered on the books of the bank as maturing on the 14th–17th October, 1871, the three days of grace being added according to the laws of Louisiana. It further appeared that on both occasions, when the bill was sent to the Louisiana bank for presentment, and when it was sent for payment, it was with instructions not to have it protested; which accounts for the fact of there having been no regular protest of the draft. Two letters of Moses Greenwood & Son to S. H. Pendleton were produced in evidence, one dated September 29, 1871, and the other November 4, 1871. In the first they say: "Your draft for life policy (some $330), due 14th of next month, was presented this day for acceptance. Not finding any advice of it, we requested them to hold till we got an answer from you. Please write at once if you want it paid." By the letter of November 4, they

say: "Yours of 27th ult. received. Will pay that insurance note when presented, as you request. This is the first advice we have had about it." This does not show that the draft had not been already presented for payment. The letters, taken together, show that Moses Greenwood & Son were not prepared to accept or pay the draft until they received Pendleton's letter of October 27, long after the draft became due. It seems very probable from the evidence that, as well when the draft was presented for payment (if it was so presented), as when it was presented for acceptance, the drawees requested the bank to hold it until they could get instructions from the drawer. At all events, the Louisiana bank kept the draft until November 17, 1871, and then returned it to the Union and Planters' Bank of Memphis. Luria, being asked, "Why did your bank hold this paper, which matured on the 17th of October, 1871, until the 17th of November, 1871, before returning it to the Union and Planters' Bank, Memphis?" answered, "I cannot say positively for what reason, not having the correspondence before me; my impression, however, is that protest being waived, and the demand for its payment having been made, it is quite likely that M. Greenwood & Co. may have requested it held until they could receive advice from the parties; however, it was retained, with the expectation of collecting, until the 17th of November, 1871, when it was returned by instructions of the Union and Planters' Bank of Memphis, in their letter dated November 14, 1871."

Santana, the runner of the Louisiana bank, whose duty it was to present notes and drafts, was also examined on interrogatories. Being asked to state all that he knew about the draft in question [which was exhibited to him], he answered that he had it for the purpose of presenting it for acceptance, which was refused, as per pencil memorandum on the back of it in his handwriting, namely, "No advice—refused acc't." He was not asked by either party whether he presented the draft for payment.

Greene, one of the defendants' agents at Memphis, testified that, on or about 3d day of October, 1871, they (the said agents) wrote to Pendleton, by mail, of the non-acceptance of

the draft, and on or about the 20th of November they again wrote to him of the non-payment of it; and that, in the latter part of November or early in December, he, Pendleton, called upon said agents, in Memphis, and stated that the reason he did not answer their letters was, that he expected soon to come to Memphis, and that he was much surprised that Greenwood & Co. did not pay the draft, but that they were now prepared to pay it, and exhibited their letter to him before referred to.

None of this evidence was objected to except, when the deposition of Luria was offered, the plaintiffs objected to his answers relating to the custom of the Louisiana National Bank in regard to presentment of paper for acceptance and payment, which objection was overruled.

We think that the evidence, taken together, was sufficient to go to the jury on the question whether the draft was, or was not, presented for payment, or, which is the same thing, whether demand of payment was waived by the payees in order that they might communicate with the drawer. The evidence of the custom and usage of the bank was not objected to when taken, nor when the interrogatories were proposed, and we think it was competent even if it had been objected to. It was competent for the purpose of sustaining and corroborating the conviction and belief of Luria, the cashier, that the draft had been presented for payment. His conviction and belief were undoubtedly based on this custom and usage, and were of value only so far as such custom and usage were invariably maintained and pursued.

A bank is a quasi-public institution. Its officers have regular and set duties to perform, directly affecting the financial transactions of the entire public. It is essential to the public interest that these duties should be performed with invariable certainty and exactness. The business community relies upon such performance, and, at least after the lapse of a considerable time, it should be presumed that these duties have been performed and business done in accordance with the custom and course of business of the bank. The degree of exactness with which they have been performed by a particular bank is matter of proof, depending upon the custom and course of business

of that bank, and is matter of consideration for the jury. Of course, proof of such custom and course of business cannot dispense with documentary evidence when such evidence is requisite in law to verify the act done, or to make it complete, such as protest and notice of dishonor, when these are necessary; and, in all cases, it is the province of the jury to determine, under all the circumstances of the case, the weight to be given to the evidence. See *Rosenthal* v. *Walker*, 111 U. S. 185, 193, and *Huntley* v. *Whittier*, 105 Mass. 391, there cited.

This kind of presumption of fact, referable to the consideration of a jury, is well known and frequently recognized in the law. Such presumptions are founded upon the experience of human conduct in the course of trade and business, under the promptings of interest or public responsibility. "Under this head," says Mr. Greenleaf, "may be ranked the presumptions frequently made from the regular course of business in a public office. . . . If a letter is sent by the post, it is presumed, from the known course in that department of the public service, that it reached its destination at the regular time, and was received by the person to whom it was addressed, if living at the place, and usually receiving letters there." He adds: "The like presumption is also drawn from the usual course of men's private offices and business, where the primary evidence of the fact is wanting." 1 Greenleaf on Evid. § 40. In support of these propositions, the author refers to many authorities, which seem to be fully in point. The same general propositions are laid down by Mr. Taylor, in his Treatise on Evidence, copying, as he usually does, the language of Prof. Greenleaf. He adds the following illustrations derived from adjudged cases in England: "If letters or notices properly directed to a gentleman be left with his servant, it is only reasonable to presume, *prima facie*, that they reached his hands. *Macgregor* v. *Keily*, 3 Exch. 794. The fact, too, of sending a letter to a post office will, in general, be regarded by a jury as presumptively proved, if it be shown to have been handed to, or left with, the clerk whose duty it was, in the ordinary course of business, to carry letters to the post, and, if he can declare that, although he has no recollection of the particular letter, he invariably took to the

post office all letters that either were delivered to him, or were deposited in a certain place for that purpose ; " referring to *Skilbeck* v. *Garbett*, 7 Q. B. 846 ; *Hetherington* v. *Kemp*, 4 Camp. 193 ; *Ward* v. *Lord Londesborough*, 12 C. B. 252 ; *Spencer* v. *Thompson*, 6 Irish Law R. N. S. 537, 565. See 1 Taylor on Evid. § 148. We may also refer to the case of *Dana* v. *Kemble*, 19 Pick. 112, in which it was held, CHIEF JUSTICE SHAW delivering the opinion, that where it was the usage of a hotel to deposit all letters left at the bar, in an urn kept for that purpose, whence they were sent frequently throughout the day to the rooms of the different guests to whom they were directed, it will be presumed that a letter addressed to one of the guests and left at the bar was received by him. And in *Barker* v. *N. Y. Central Railroad Co.*, 24 N. Y. 599, it was held admissible to show the regulations of the corporation and the customs of its agents, in respect to giving notice to passengers of the necessity of their changing cars in order to reach a given station, to corroborate the testimony of the conductor in that regard; the Court of Appeals, by SUTHERLAND, J., remarking: "This evidence would tend to corroborate Budd upon the principle that the business of the defendant is a sort of public business, and their employees a kind of public officers; and that the presumption is, that they would perform their duties according to the regulations of the business."

See further, as to presumptions of this kind, 2 Daniel on Negotiable Instruments, §§ 1054, 1055, and the authorities there cited.

The cases of *Musson* v. *Lake*, 4 How. 262, and *United States* v. *Ross*, 92 U. S. 281, are relied on by the defendants in error to show that the kind of presumption to which we have referred cannot be resorted to for the purpose of proving a distinct fact necessary to the case which it is adduced to support.

We do not think that those cases impugn the doctrine we have laid down. In *Musson* v. *Lake* the official certificate of a notary, that he had demanded payment of a foreign bill, was held insufficient to prove that he had presented the bill itself to the drawees for payment, and the presumption that,

as a public officer, he had done his duty, could not supply this omission. But, by the law merchant, the certificate of protest is the proper evidence in such cases, and although a presentment may have been proved by oral testimony, there was no attempt to prove it in this way. As the court deemed the certificate of protest defective and insufficient, it was a legitimate conclusion that the defect could not be supplied by mere presumption.

In *United States* v. *Ross* it was sought to deduce, by a presumption of law, the essential facts, that the claimant's cotton was delivered to a Treasury agent, was sold, and the proceeds paid into the Treasury, when the only proof was, and the only facts found by the Court of Claims were, that the cotton was captured and sent forward by a military officer from a station in Georgia to certain connecting stations and railroad lines leading north, and that there were certain funds in the Treasury which might have been the proceeds of the cotton. Of course, this court held that such a finding was insufficient to establish the facts referred to.

It is unnecessary to go as far as some of the cases referred to have gone, to sustain the competency of the evidence offered in the present case. The public character of the business of a bank, the strict regulations under which its business is usually transacted, the care required of its officers and agents in performing their duties, bring the case fully within the operation of the rule which allows usage and the course of business to be shown for the purpose of raising a *prima facie* presumption of fact in aid of collateral testimony. We have no hesitation in holding that the evidence offered was competent to corroborate the testimony of the cashier.

We do not deem it necessary, at this time, to go minutely into the question as to the exact day when the draft matured. If it was the general custom of the New Orleans banks to allow grace upon bills of exchange even when it was waived, as the testimony of Luria would seem to imply, it is possible that such a custom made it the duty of the bank to allow it in this case. We express no opinion on the subject. We are not examining the case upon its whole merits, as upon an appeal;

but, being satisfied that the direction of the court was wrong as to the necessity of a regular protest for non-payment, we only examine the further question raised by the defendant in error, as to the insufficiency of the evidence adduced to show a demand of payment, for the purpose of determining as to its admissibility and competency ; its weight will be for the consideration of the jury under proper instructions from the court on a future trial.

*The judgment of the Circuit Court is reversed, and the cause remanded, with directions to award a new trial.*