**Turner MYER III**

v.

**John J. CALLAHAN**[1] **Commissioner of Social Security Administration.**

No. 1:94–CV–567.

United States District Court, E.D. Texas, Beaumont Division.

June 25, 1997.

---

1. John J. Callahan has been appointed to serve as Acting Commissioner of Social Security, effective March 1, 1997, succeeding Shirley S. Chater. He is substituted for Shirley S. Chater as the defendant in this suit under Rule 25(d)(1). FED. R. CIV P. 25(d)(1). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g) (providing "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Turner Myer III, pro se.

Steven Mason, Asst. U.S. Atty., U.S. Attorney's Office, Tyler, TX, for defendant.

## MEMORANDUM ORDER OVERRULING PLAINTIFF'S OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

JOE J. FISHER, District Judge.

The court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court.

The court has received and considered the Report and Recommendation of United States Magistrate Judge Hines filed pursuant to referral, along with the record and all other evidence. Plaintiff filed objections to the magistrate judge's recommendation on June 16, 1997. This requires a *de novo* review of the objections in relation to the pleadings and the applicable law. *See* FED. R. CIV. P. 72(b). The objections raise no new legal arguments, and rest on issues that were considered and analyzed correctly by the magistrate judge in his report and recommendation.

Further, the court concludes, after careful independent consideration, plaintiff's objec-

tions are without merit. Plaintiff's objection based on the wholly unsupported allegation that an affiant perjured herself is conclusory and self-serving. Further, Myer's objection that he is merely unable to recall receiving a document, which was reportedly sent by an affiant, is insufficient to raise a genuine issue of material fact as to actual receipt. It is therefore

**ORDERED** that plaintiff's objections are **OVERRULED**. The findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED**. An order granting defendant's motion for summary judgment will be entered separately.

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE RE: DEFENDANT'S FEBRUARY 3, 1997 MOTION TO DISMISS

HINES, United States Magistrate Judge.

Plaintiff Turner Myer III ("Myer"), proceeding pro se, requests judicial review of a decision of the Social Security Administration ("SSA") denying his claim for disability benefits.

Defendant seeks dismissal, arguing plaintiff's complaint is barred for failure to timely file as required under 42 U.S.C. § 405(g).

This report addresses defendant's motion to dismiss.[2] The motion should be granted because plaintiff failed to file his complaint within the statutory limitations period, failed to request an extension of that deadline, and has not demonstrated that equitable tolling excuses the untimely filing.

### I. BACKGROUND

Turner Myer III claims disability due to a back-related physical impairment and to an unspecified mental condition. Myer is a Texas Department of Criminal Justice–Institutional Division inmate incarcerated at the Ramsey II Unit in Rosharon, Texas. His prisoner status makes him ineligible to re-

---

**2.** The motion is referred to the undersigned United States magistrate judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B).

ceive Social Security disability benefits. 42 U.S.C. § 402(x). Governing circuit law, however, entitles him to apply for benefits and to seek judicial review of an adverse decision to establish entitlement to benefits upon release from prison. *Brue v. Heckler*, 709 F.2d 937, 938–39 (5th Cir.1983).

Myer's case is before the district court for the third time. In the first instance, the complaint was dismissed at the outset. An order entered in the Southern District of Texas prevented Myer from filing further suits until payment of a monetary fine imposed for filing a duplicative and meritless pro se and *in forma pauperis* suit.[3] The Fifth Circuit Court of Appeals independently determined, however, that the Southern District's sanctions order prevented only the filing of further civil rights suits. Thus, dismissal was improper because the sanction did not prevent the instant suit appealing from a denial of social security benefits. *Myer v. Shalala*, No. 94–41354, slip op., 56 F.3d 1384 (5th Cir. May 17, 1995) (*"Myer I"*).

Following remand, the Commissioner of the Social Security Administration ("Commissioner") moved to dismiss Myer's action as time-barred. Myer's complaint clearly was not filed within the requisite sixty days after receipt of notice of the Commissioner's decision. Thus, the court granted the Commissioner's motion and dismissed the complaint.

Upon considering Myer's case a second time, the Fifth Circuit observed that Myer's response to the Commissioner's motion to dismiss included assertions that he made timely attempts to appeal the Commissioner's decision in the United States District Court for the Southern District of Texas. According to Myer, that court refused to entertain his action because of his failure to pay the monetary sanction mentioned above. The Fifth Circuit concluded that these asserted facts might trigger "equitable tolling"[4] of the limitations period. The Fifth Circuit reasoned that if (1) plaintiff attempted to file a timely complaint in another court,

and (2) that court wrongly refused to file the complaint, and (3) he filed the instant suit within 60 days of notification of that refusal, Myer may be entitled to equitable tolling of that period. The court opined that equitable tolling likely would be appropriate if Myer's complaints were returned to him less than 60 days before he filed the instant suit, assuming the prior suits would have otherwise met the requirements for filing.

The appellate court noted, however, that there was no evidence that plaintiff sought an extension of time although initially advised of that right in the March 25, 1994 notice from the SSA. Thus, that court questioned why, if the Southern District of Texas returned Myer's complaints to him even as late as June 1994, he had neither requested an extension of time nor filed the instant suit before September 1994.

Finally, the Fifth Circuit observed that other facts may support application of equitable tolling. For example, equitable tolling might be appropriate if the Southern District returned Myer's complaint accompanied with a warning that further sanctions might be imposed if he attempted to file his Social Security claim or if Myer did not have the ability to pay the $25 sanction at the time of these attempted filings.

Forasmuch as the district court has not considered these potential tolling factors, the Fifth Circuit vacated the dismissal and remanded with instructions to provide Myer an opportunity to document his contention that timely attempts to file suit were denied by other courts, and, if the last suit was returned more than sixty days before September 1994, to explain why he did not sooner file the instant suit or seek an extension from the Social Security Administration ("SSA") in which to begin a civil action. *Myer v. Chater*, No. 95–40930, slip op. at 1–5 (5th Cir. Nov.29, 1996) (per curiam) (*"Myer II"*).

## II. PROCEEDINGS AFTER REMAND

Upon remand, this court devised a comprehensive questionnaire designed to elicit from

---

**3.** Under General Order 94–6, the Eastern District of Texas honors and enforces sanction orders issued against abusive prisoner litigants in other districts of Texas.

**4.** For a discussion of the legal doctrine of equitable tolling, see *infra* Section VI.A.

Myer the information considered relevant by the appellate court. Plaintiff was directed to respond to the questionnaire by order dated January 21, 1997. Specifically, the questionnaire afforded Myer an opportunity to provide relevant information regarding his alleged attempts to commence this action in the Southern District of Texas. In responses to those questions, plaintiff asserted that he attempted to file a complaint seeking review of the administrative denial of his application for Social Security disability benefits two times in the Southern District: (1) on April 9, 1994 in the Galveston Division, and (2) on May 9, 1994 in the Houston Division. A copy of the complaint he allegedly sent to Galveston was submitted with his responses. Myer did not provide a copy of the complaint he allegedly sent to the Houston Division.[5] However, he submitted a copy of a letter dated May 9, 1994 addressed to Michael N. Milby, Clerk of the United States District Court for the Southern District of Texas, Houston Division, headed "Re: Turner Myer III, Declaration of Inability to Pay Cost." This letter appears to have accompanied the complaint he allegedly submitted to the Houston Division on that date.

Myer claims these courts did not take any action on his attempts to file his complaint. Further, he asserts he did not receive any correspondence regarding his efforts from either court; however, he acknowledges a mental condition that may prevent him from recalling whether he actually received such correspondence.

Myer further states that he did not sooner file the instant suit or seek an extension of time from the SSA because, according to his belief, he did not receive any response from the Houston Division after June 1994. Myer asserts that he was taken from prison facilities in Rosharon, Texas to Jefferson County Jail in Beaumont, Texas during July and August 1994, and that mail received at the Rosharon facility would not have been forwarded. Myer does not indicate whether any correspondence from the Galveston or Houston Divisions was received for him at

the Rosharon facility during July or August of 1994.

Myer also submitted materials related to his financial status during Spring 1994. Those documents indicate that he was unable to pay the relevant filing fees at the time he attempted to file his complaints in the Southern District of Texas. *See* Myer Resp. at Ex. A (presenting declaration of inability to pay costs, including statement he had no funds credited to him in the Inmate Trust Fund).

## III. COMMISSIONER'S SECOND MOTION TO DISMISS

On February 3, 1997, before Myer responded to the court's questionnaire, the Commissioner moved for dismissal a second time. The motion, drafted in light of the fifth Circuit's opinion in *Myer II,* is supported with three declarations from court personnel in Galveston and Houston. The purpose of these declarations, each submitted under penalty of perjury as provided in 28 U.S.C. § 1746, is to provide an outline of Myer's attempted submissions in the Southern District during Spring 1994; to indicate the courts' actions on those submissions; and, ultimately, to establish that Myer did not file this action within the prerequisite sixty-day period.

The first declaration is from Amy Ardington, a briefing attorney for United States Magistrate Judge John R. Froeschner in Galveston. In 1994, Ms. Ardington reviewed all Social Security disability appeal cases filed in the Southern District of Texas, Galveston Division. Ms. Ardington avers that Myer presented a Social Security complaint to the Clerk's office in Galveston in April 1994. Plaintiff was attempting to proceed *in forma pauperis* in that action, but failed to sign a "declaration of inability to pay costs." For this reason, she advised the clerk's office that although the complaint could be received and a case file opened, the incomplete declaration would have to be returned with instructions regarding the necessity of signing pleadings. Ardington Aff. at 1. She suggest-

---

5. Myer does assert, however, that the Galveston complaint is the same as the one he sent to

Houston. Pl.'s Resp. at 3.

ed use of a standard form used in the clerk's office for communications with pro se inmate litigants, known as a "Rule 5 letter." A computer printout of a memorandum from Ms. Ardington to clerical personnel is attached to the declaration. *Id.*

Ms. Ardington was unaware of what subsequent actions were taken as to Myer's complaint. However, she ascertained that records of the clerk's office do not reveal that the complaint was ever docketed and filed. *Id.* at 2.

The second declaration is of Kate Robertson, senior staff attorney for prisoner litigation in the Southern District of Texas, Houston Division. Ms Robertson states a document was received from plaintiff on April 15, 1994. She reasons that the document was probably a civil rights complaint, rather than a Social Security claim, and was returned to plaintiff without filing. Robertson bases these conclusions upon her customary practices. Pleadings and other papers submitted by prisoners in 1994 were recorded in a mail log maintained by the clerk's office in Houston. Pleadings that violated relevant sanction orders were noted in an office mail log but returned to inmates without filing. The office mail log was then scratched through to indicate that no case is opened. In contrast, plaintiff's civil action seeking review of denial of social security disability benefits would have been docketed and filed because it would not have violated the relevant sanction order.

Ms. Robertson's office mail log indicates a submission was received from Myer, but the entry was scratched out, leading Robertson to conclude that the submission was probably returned to Myer "on or about the same day it was received (April 15, 1994)." Robertson Aff. at 1–2. Thus, she reasons the April 15, 1994 submission was probably a civil rights complaint, which was returned pursuant to the sanction order. *Id.* at 2.

The third declaration is by Susan Fedele, a deputy district clerk in the United States District Clerk's Office, Houston, Texas. Ms Fedele states that another document was received from Myer on or about May 13, 1994. Because Myer was on a list of individuals who were under court-ordered sanctions at that time, Ms. Fedele prepared a form letter, or "Rule 5 letter," indicating that the documents would not be accepted for filing due to the sanctions order. This letter, along with the documents received, were returned to Myer on May 13, 1994.

Based on these declarations, defendant argues that the evidence shows that all documents plaintiff sent to the Galveston and Houston courts were promptly returned, and that they were done so well beyond 60 days before Myer filed the complaint in this district. Thus, even if the statute of limitations were tolled during the period of time that plaintiff allegedly attempted to file an action in the Southern District of Texas, that limitations period ran before September 19, 1994, when Myer filed his complaint with this court.

## IV. PLAINTIFF'S RESPONSE TO MOTION TO DISMISS

Myer responded that he tried to file suits in the United States District Court for the Southern District of Texas, Galveston Division, in April, 1994, and in the United States District Court for the Southern District of Texas, Houston Division, in May, 1994. Myer did not indicate when either of the suits was refused, dismissed or returned, or when he learned of the disposition of either attempt. The only new documentation attached to plaintiff's response was a receipt from the Southern District of Texas, Houston Division, dated March 24, 1995, reflecting receipt from Myer of $25 as payment of "sanctions."

Thus, Myer's response to the Commissioner's motion adds nothing new. Essentially, he continues to rest on the argument that attempts to timely file his complaint seeking judicial review of the administrative denial of disability benefits were hindered by the refusal of two federal courts in the same district to entertain his complaint.

Finally, Myer neither argues that the complaint was filed within 60 days after the date of the notice nor that he requested an extension of that period. Further, Myer asserts no misconduct, nor other relevant fault, on the part of the SSA.

## V. PROPOSED FINDINGS OF FACT

 Faulty memory and incomplete documentation of actions in Southern District courts leave some evidentiary gaps. But substantial information is before the court. Aided by established evidentiary presumptions and common sense deductions, the court can reconstruct the probable sequence of events. The evidence suggests the following factual scenario:

1. The decision of the SSA Appeals Council denying Myer's application for social security benefits was issued on March 25, 1994. Myer received the decision by March 30, 1994.[6]

2. Ten days later, on April 9, 1994, Myer submitted a proposed complaint appealing the adverse decision to the United States District Court, Southern District of Texas, Galveston Division.

3. The Galveston complaint did not meet the requirements for filing because an accompanying "Declaration of Inability to Pay Cost," liberally construed as an application to proceed *in forma pauperis,* was unsigned.

4. Docketing personnel neither filed nor docketed the Galveston complaint. However, pursuant to the suggestion of Amy Ardington, law clerk to United States Magistrate Judge John R. Froeschner, Myer's declaration was returned with a "Rule 5 letter" noting that the declaration could not be accepted because it was unsigned.

5. Myer next submitted a civil rights complaint to the United States District Court, Southern District of Texas, Houston Division, on April 15, 1994. The Houston complaint was not filed or docketed because Myer's proposed action contravened an extant sanctions order that prevented filing of further civil rights actions until payment of a $25 fine. This action was returned to Myer unfiled on or about the day it was received, i.e., April 15, 1994.

6. On May 9, 1994, Myer submitted a second proposed complaint appealing the adverse social security benefits decision. This complaint was presented to the United States District Court, Southern District of Texas, Houston Division.

7. The Houston social security complaint was accompanied by a May 9, 1994 letter addressed to Michael N. Milby, Clerk of the United States District Court for the Southern District of Texas, Houston Division, and captioned "Re: Turner Myer III, Declaration of Inability to Pay Costs." Myer's letter acknowledges both the communication from the Galveston Division (as evidence by the caption), and the communication from the Houston Division (as evidenced by text referring to the sanctions order). Myer requests the Clerk's help in getting his social security appeal filed.

8. On May 13, 1994, Susan Fedele, a deputy district clerk for the United States District Court, Southern District of Texas, mailed to Myer a "Rule 5 letter" responding to Myer's May 9th letter. The response was:

 This court has repeatedly informed you that you are barred from filing any complaints in this court per court order until all sanction have been paid!! You received this order and should know what the order states—that until sanctions are paid the court will not accept filings from you.

9. Myer received Fedele's "Rule 5" response within a week, or by May 20, 1994, at the Ramsey II Unit, Rosharon, Texas.[7]

---

6. Under 20 C.F.R. § 422.210(c) (1996), it is presumed, absent a reasonable showing to the contrary, that the decision was received five days after the notice thereof. *See Flores v. Sullivan,* 945 F.2d 109, 111 (5th Cir.1991). If the claimant successfully rebuts the presumption, the burden is then placed upon the Secretary to establish that the claimant received actual notice. *Matsibekker v. Heckler,* 738 F.2d 79, 81 (2d Cir. 1984).

7. Federal courts routinely apply the common law presumption that properly mailed documents are received in due course by the addressee, or after a normal interval—two or three days, e.g., under current Postal Service norms. *Carroll v. Commissioner of Internal Revenue,* 71 F.3d 1228, 1230 (6th Cir.1995). A letter, properly addressed, stamped and mailed is presumed to have been received by the addressee in due course of usual time and was actually received by

10. Myer remained, at the Ramsey II Unit until sometime in July 1994. At that time, he was bench warranted to the jail in Jefferson County, Texas. He returned to the Ramsey II Unit in August 1994.

11. Myer submitted a third complaint appealing denial of social security disability benefits to the Clerk of the United States District Court, Eastern District of Texas on September 22, 1994.

12. Between May 20, 1994 (date of presumed receipt of last communication from Southern District of Texas) and September 22, 1994, Myer took no action to seek an extension from SSA or to present his complaint to this or any other court.

13. Myer was not threatened with any additional sanction if he persisted in efforts to file the instant complaint.

14. Myer was financially able to pay the $25 sanction at the time he attempted to file the actions appealing the adverse social security decision in the Southern District.[8] Myer eventually paid the sanction on March 24, 1995.

## VI. DISCUSSION AND ANALYSIS

■ Because it is necessary to review available evidence outside the pleadings, defendant's motion is more appropriately treated as one for summary judgment. *See National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 707 (5th Cir.1994) (stating that "[b]ecause the district court was required to review the available evidence ... this motion [to dismiss] is more appropriately treated as one for summary judgment."). Such a conversion, explicitly sanctioned under the Rules, is appropriate so long as both sides have notice that the court will consider extrinsic matters, and have an opportunity to present supporting materials in response. *See Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir.1985); *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir.1980). Here, both parties had such notice and opportunity to respond, and because their submissions address the issues and arguments raised by the opposing party, the motion to dismiss is properly converted to a motion for summary judgment. *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986).

A party is entitled to summary judgment upon a showing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert.*

---

the person to whom it was addressed. *Rosenthal v. Walker*, 111 U.S. 185, 193–94, 4 S.Ct. 382, 386, 28 L.Ed. 395 (1884); *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir.1989) (citing *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932)); *see Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir.), *cert. denied*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983).

Placing letters in the mail may be proved by circumstantial evidence, including customary mailing practices of the sender. *Kozloff*, 695 F.2d at 944; *Simpson v. Jefferson Standard Life Ins. Co.*, 465 F.2d 1320, 1324 (6th Cir.1972). Proof of mailing may also be established if the letter was shown to have been sent through a systematic process at the clerk's office or through records at the clerk's office. *See Knickerbocker Life Ins. Co. v. Pendleton*, 115 U.S. 339, 6 S.Ct. 74, 29 L.Ed. 432 (1885); *In re Longardner & Assocs., Inc.*, 855 F.2d 455, 459–60 (7th Cir. 1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989); *Myers v. Moore-Kile Co.*, 279 F. 233 (5th Cir.1922).

The presumption of delivery and receipt is rebuttable. *Rosenthal*, 111 U.S. at 193–94, 4 S.Ct. at 386; *Beck*, 882 F.2d at 996. The non-moving party must present substantial evidence to rebut the presumption of delivery and receipt. *See Shur–Value Stamps, Inc. v. Phillips Petroleum Co.*, 50 F.3d 592, 596 (8th Cir.1995).

**8.** Myer's completed "Application to Proceed *In Forma Pauperis*," filed on September 22, 1994, contains a certification that Myer's prison account had an average balance of $13.75 during the six months prior to May 25, 1994. Myer executed the form on May 19, 1994, and submitted no additional documentation indicating whether his financial condition had changed during the four month period between the execution of the application and its submission to this court. Although the certificate indicated a current balance of only ten cents, based upon the average monthly balance the court finds that Myer had the ability to pay the sanction, in installments if necessary, prior to or in April or May 1994.

*denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). All justifiable inferences must be drawn in favor of the non-movant. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Oliver Resources PLC v. International Fin. Corp.,* 62 F.3d 128, 130 (5th Cir.1995).

Conclusory allegations are insufficient to defeat a motion for summary judgment when the movant has met its summary judgment burden. *See, e.g., Campbell v. Sonat Offshore Drilling, Inc.,* 979 F.2d 1115 (5th Cir. 1992); *Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir.1992). To successfully oppose a motion for summary judgment, the non-movant cannot rest on mere allegations or denials but must set forth specific facts showing that a genuine issue of material fact exists. FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–22, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.,* 55 F.3d 181, 184 (5th Cir.1995). A material fact is any fact "that might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510: *Meyers v. M/V Eugenio C,* 919 F.2d 1070, 1072 (5th Cir.1990). The Fifth Circuit explains that "a genuine dispute requires more than a showing of some metaphysical doubt—there must be an issue for trial." *Meyers,* 919 F.2d at 1072 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

## A. Equitable Tolling

In *Myer II* the Fifth Circuit directed this court to consider whether application of principles of "equitable tolling" excuse Myer's otherwise late filing of his complaint seeking judicial review of the Commissioner's denial of social security disability benefits. Myer has presented the relevant evidence in response to this court's questionnaire and also in response to the Commissioner's second motion to dismiss. The evidence reveals the facts enumerated in the preceding section. The next step is application of the facts to principles of law.

■ Equitable tolling is "a type of equitable modification, which 'often focuses on the plaintiff's excusable ignorance of the limita-

tions period and on [the] lack of prejudice to the defendant.'" *Cocke v. Merrill Lynch & Co.,* 817 F.2d 1559, 1561 (11th Cir.1987) (quoting *Naton v. Bank of Cal.,* 649 F.2d 691, 696 (9th Cir.1981)). This doctrine was defined by the Supreme Court as follows:

> [T]his Court has long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.

*Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946).

■ Several courts have recognized that equitable tolling arises when the party against whom it is asserted engages in some affirmative misconduct. *See, e.g., Crawford v. United States,* 796 F.2d 924, 926 (7th Cir.1986). Further, a party may be entitled to equitable tolling based upon a court's action or misaction, e.g., if the plaintiff was awaiting court action on a motion or if the court led the plaintiff to believe he had done everything required of him. *Parrott v. Commissioner SSA,* No. 9:95–CV–256, 1995 WL 750152, at *2 (E.D.Tex. Dec.14, 1995) (citing *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984)); *see also St. Louis v. Texas Worker's Compensation Comm'n,* 65 F.3d 43, 47 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2563, 135 L.Ed.2d 1080 (1996).

■ The complaining party has the burden of demonstrating facts that justify equitable tolling. *Wilson v. Secretary, Dep't of Veterans Affairs,* 65 F.3d 402, 404 (5th Cir. 1995). Thus, it is Myer's burden to establish entitlement to equitable tolling.

## B. SSA Actions

Myer asserts no misconduct, nor other relevant fault, on the part of the SSA. Rather, he argues that his attempts to timely file his compliant were hindered by the refusal of

two federal courts in the same district to file his complaint seeking judicial review of the administrative denial of disability benefits.

## C. Court Actions

The equitable tolling issue turns on whether the courts' actions or misactions injured Myer to the extent that through no fault of his own he failed to file a timely complaint. This report next examines the actions of each court to which Myer allegedly submitted a complaint.

### 1. The Galveston Complaint

This complaint sought judicial review of the Commissioner's adverse decision. It was submitted on April 9, 1994, ten days after receipt of the decision. Hence, it was timely as only ten days of the sixty-day limitations period ran before Myer attempted to bring suit.

The Galveston complaint, however, did not meet legal requirements for filing because Myer did not tender a filing fee or an executed application to proceed *in forma pauperis.* Following established screening procedures, clerical personnel were directed to return the application to proceed *in forma pauperis.* The evidence is unclear as to when Myer received notice of this deficiency. The court may reliably conclude, however, that Myer received it prior to May 9, 1994. On that date, he wrote Michael N. Milby, clerk of court, and specifically mentioned the returned "Declaration of Inability to Pay Cost" in the caption of his letter.

The Galveston complaint was never filed because it was incomplete when submitted. Myer was made aware of the specific deficiency by May 9, 1994. He received no threats of further sanctions from the Galveston court. Hence, limitations began to run again by May 9, 1994 at least insofar as actions of the Galveston court are concerned.

### 2. The Houston Civil Rights Complaint

Myer submitted a civil rights complaint in Houston on April 15, 1994. This action has no direct bearing on the matter at issue. The action properly was not filed due to an existing sanctions order and unpaid $25 fine.

It was returned to Myer by regular mail on or about the same day it was received.

Myer received notice of the rejection of this complaint by letter dated April 20, 1994. His letter of May 9, 1994 to Michael N. Milby, clerk of court, specifically mentioned the April 20, 1994 letter and information contained therein regarding the sanctions order barring him from filing further actions.

There is no evidence Myer was threatened with additional sanctions. Thus, no action on the part of the Houston court with regard to the April 15, 1994 civil rights complaint triggered equitable tolling.

### 3. The Houston Social Security Complaint

Myer tendered a new complaint seeking judicial review of the adverse social security decision to the Houston court on May 9, 1994, along with the aforementioned letter to Mr. Milby. This complaint also was refused, this time based on the outstanding sanctions order. Because the sanctions order barred Myer only from filing further civil rights actions, the court's refusal to file the complaint was wrongful. *See Myer,* No. 94-41354, at 2 (*Myer I* ).

On May 13, 1994, Deputy District Clerk Susan Fedele wrote Myer to specifically advise why his complaint was rejected. It is reasonable to conclude that Myer learned of the Houston court's action regarding his proposed social security case by May 20, 1994. The common law mailbox rule presumes that properly mailed documents are actually received in due course by the addressee. Under current Postal Service norms, due course means two or three days. *Carroll v. Commissioner of Internal Revenue,* 71 F.3d 1228, 1230 (6th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996). Allowing additional time for delivery of prison mail, and noting the promptness with which Myer received via regular mail the original SSA Appeals Council Decision and the Houston clerk's April 20, 1994 letter, it is reasonable to conclude that Myer received Ms. Fedele's "Rule 5 letter" within a week, or by May 20, 1994.

The Fedele "Rule 5 letter," while emphatic, did not threaten additional sanctions if Myer persisted.

### D. Myer's Subsequent Inaction

When Myer received Ms. Fedele's "Rule 5 letter," i.e., at least by May 20, 1994, he knew that the Houston and Galveston courts had not accepted his social security complaints. He had no reason to conclude that further efforts to pursue the claim would result in additional sanctions. Accordingly, the onus of taking further action to prosecute the case shifted to him.

 Viewed in light most favorable to Myer, he is entitled under equitable tolling principles to suspension of the applicable sixty-day limitations period for the entire time between April 9, 1994 and May 20, 1994. Only ten days of the limitations period had elapsed before April 9, 1994. Thus, Myer had 50 additional days within which to seek an administrative extension from SSA, attempt to refile in the Southern District, or present his complaint to another court.[9]

Myer did none of the above. There is no evidence that anything beyond his control prevented him from taking further action. He remained at the Ramsey II unit, from which he had instituted at least three proposed actions in a month's time, for more than thirty days He presents no evidence that he was unable to continue pro se legal activities while bench warranted to the Jefferson County jail. He returned to the Ramsey II unit for approximately one month before submitting the instant complaint to the Eastern District of Texas.

Excluding time that Myer's various actions that were pending in federal court in Houston and Galveston, and allowing for reasonable periods for Myer to receive notice of the actions of those courts, Myer waited over 134 days before instituting the instant suit in September, 1994. This delay was more than twice as long as allowed under the governing statute.

Myer submitted materials related to his financial status during Spring 1994, which indicate that he believed himself to be unable to pay the filing fees requisite to filing a complaint with the federal court. This court has found, however, that Myer was able to pay the $25 sanction by the time he attempted to file his complaints in the Southern District of Texas. But even if he was unable to pay that fine, that inability would not justify the grant of equitable tolling for two reasons. First, there is no fee for requesting an extension of time from the SSA, and the only associated costs are those to prepare and mail the relevant request. Second, Myer could have, as he ultimately did in the instant case, pursue his claim with a properly executed application to proceed *in forma pauperis*.

 Ultimately, Myer's only justification for failing to act is his unsworn response that he does not remember receiving any notification from the Houston court regarding his proposed May 9, 1994 social security complaint. Myer admits, however, that he has a faulty memory. Further, this assertion standing alone and even when viewed in a light most favorable to Myer, does not create a justifiable inference that Myer did not receive such notice. *See Beck*, 882 F.2d at 996-97 (alleged recipient failed to rebut presumption of delivery because the only evidence of non-delivery presented was an employee's testimony that he could not remember receiving the letter and could not recall that the person who signed for the letter worked for the company); *see also Anderson v. Lib-*

---

9. A more strict interpretation is possible under the appellate court's guidelines in *Myer II*. It was suggested that Myer may be entitled to equitable tolling if his "complaints *properly* sought review of the SSA's March 25, 1994, decision denying Myer's application for social security benefits, and if the suits were wrongly dismissed because of Myer's failure to pay the earlier sanctions," or, in other words, "provided the prior suits [Galveston and Houston] were such as would, apart from timing, meet requirements of section 405(g)." *Myer*, No. 95-40930, slip op. at 6-7, 99 F.3d 1134 (Sept. 17, 1996) (*Myer II*) (emphasis added). Myer did not properly file his complaint in Galveston, resulting in that court's refusal to file the document. Therefore, Myer would technically not be entitled to tolling until he properly tendered his complaint. In other words, the 30-day period from April 9, 1994, when he attempted to file his complaint in Houston, to May 9, 1994, when he attempted to file his complaint in Houston, should not be tolled.

*erty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

## VII. CONCLUSION

Myer filed the instant complaint 180 days after notice of the adverse decision of the SSA Appeals Council. Absent tolling of the sixty-day limitations statute, Myer was required to institute suit not later than May 24, 1994. Myer attempted to institute timely suits in federal court for the Southern District of Texas, and is entitled to equitable tolling of the limitations period for 41 days while awaiting court action on those efforts. Equitable tolling extends the deadline for filing the instant suit until July 9, 1994. Myer did not institute suit until September 22, 1994, or 75 days too late. There is no wrongful action attributable to SSA or the courts, or other reasons justifying Myer's delay. Thus, equitable tolling does not excuse Myer's late filing of the complaint, and the Commissioner's motion to dismiss should be granted.

## VIII. RECOMMENDATION

Defendant John J. Callahan's motion to dismiss, treated as a motion for summary judgment, should be granted.

## IX. OBJECTIONS

Objections must be (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(b), 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).