**INTERSTATE OIL CO. et al. v. GORMLEY.**
No. 9084.

Circuit Court of Appeals, Ninth Circuit.
June 29, 1939.

Thornton Wilson, of Oakland, Cal., for appellants.

Howard Robertson and Don S. Irwin, both of Los Angeles, Cal., for appellee.

Before WILBUR, MATHEWS, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order confirming a sale of property of the Interstate Oil Corporation made by the receiver of that corporation, appointed in a suit instituted in equity for the liquidation of the corporation. The receiver negotiated the sale of all the property of the Interstate Oil Corporation to the Exeter Oil Company, Ltd., subject to the approval of the court. On March 11, 1938, he applied to the court for an order approving the contract of sale as amended, and prayed for hearing after notice, for the approval and confirmation of a contract of sale with its amendment, and for authority to carry out the terms of the contract. An order to show cause was issued and served by publication, posting and mailing. At the time fixed for hearing, objections were filed by appellant Interstate Oil Company, which company claimed to be owner of all the outstanding common stock of the Interstate Oil Corporation.

After the hearing, on April 28, 1938, the court overruled the objections and directed that the receiver consummate the sale in accordance with the terms of the contract already negotiated. Thereafter, on April 29, 1938, the receiver filed a petition for the confirmation of the sale to the Exeter Oil Company, Ltd., praying that the time be fixed for the confirmation of sale, that notice thereof be given, that competitive bids in writing be submitted not later than two days before the hearing, and that three appraisers be appointed to appraise the property.

An order to show cause was issued in accordance with the prayer of the petition fixing May 16, 1938, as the date of hearing and consideration of bids and stating in detail the terms and conditions of the sale made to the Exeter Oil Company as authorized by the order of April 28, 1938. This order to show cause was served by mail and by publication. No other bids were received. Thereafter, on May 12, 1938, an appraisal of the property was filed fixing the value of all the property of the corporation in Kern County at $145,080.97, and in Los Angeles at $32,027.27, a total of $177,108.24.

At the time fixed for hearing objections were filed by Helen R. White, Betty B. White, and Jaqueline J. White, claiming to be legatees of Anna M. White, who is shown in the list of creditors as the assignee of the claim of F. G. White. These objections were adopted by the Interstate Oil Company and also by Wm. A. Monten, who claimed to be a creditor because of his "labors as an attorney in representing it [Interstate Oil Corporation] after the inception of the receivership."

After hearing the matter the court affirmed the sale to the Exeter Oil Company on May 27, 1938. Thereafter, a petition for appeal from the order of May 27, 1938, was presented by the Interstate Oil Company and by Helen R. White, Betty Barnard White and Jaqueline J. White by Floyd G. White, guardian and attorney in fact. The appeal was allowed. A citation on appeal was issued August 23, 1938 directed to F. B. Gormley, the receiver, and a cost bond on behalf of the Interstate Oil Company for $250 in favor of the receiver was filed and approved.

The appellee moves to dismiss the appeal upon the ground, among others, that the Exeter Oil Company, the purchaser at the sale, is a necessary party to the appeal. This view is supported by the opinion of the Circuit Court of Appeals for the Eighth Circuit in McLean v. Jaffray, 71 F.2d 743, where a sale had been made by a receiver in an equitable receivership and an appeal taken from the order confirming the sale and the purchaser not joined as appellee. This decision is in accord with the decisions of the Supreme Court (Davis v. Mercantile Trust Co., 152 U.S. 590, 14 S.Ct. 693, 38 L. Ed. 563; Kneeland v. American Loan & Trust Co., 136 U.S. 89, 10 S.Ct. 950, 34 L. Ed. 379), cited by the Circuit Court of Appeals for the Eighth Circuit in its opinion in that case.

However, where the defect in parties is in those parties who should have been served with citation as appellees, and where petition for appeal is timely and otherwise properly allowed, citation may be issued and served subsequently to obtain jurisdiction of a necessary appellee, if timely application is made to this court for such citation. In re Knox-Powell Stockton Co., 9 Cir., 97 F.2d 61. See, also, Knickerbocker Life Ins. Co., v. Pendleton, 115 U.S. 339, 6 S.Ct. 74, 29 L. Ed. 432. Such permission is discretionary however, (In re Knox-Powell Stockton Co., supra) and should not be granted unless there is merit in the contentions of the appellants. Although no request has been made to cause citation on appeal to be issued to the purchaser, we have considered that question.

The evidence presented to the trial court is not brought before this court. In sup-

port of its contention that the court erred in confirming the sale by the appellee as receiver of the Interstate Oil Corporation to the Exeter Oil Company, appellants rely upon the terms of the contract of sale.

Appellants contend that the sale was for a grossly inadequate consideration. The contract between the Exeter Oil Company, buyer, and the appellee, as receiver of the Interstate Oil Corporation, seller, was executed on October 1, 1937, and thereafter amended by the parties thereto as of that date. In the contract, the sale price of the properties was fixed at $241,272.45. Eight thousand dollars was payable in cash and the balance was to be paid by the assumption by the buyer of all of the debts of the Interstate Oil Corporation aggregating $233,272,45. The buyer agreed to "indemnify seller and hold seller and Interstate [Interstate Oil Corporation] harmless from all liability arising from, or on account of or collection of said debts and obligations, and from all judgments rendered against buyer, seller and/or Interstate arising therefrom * * *." The buyer was to obtain agreements from creditors releasing the receiver and the Interstate Oil Corporation from all liability to the creditors. In the release agreements provided for and offered the creditors by the Exeter Oil Company, the Exeter Oil Company agreed to operate and maintain the oil property in accordance with good oil practices and to make certain repairs and improvements. Proceeds from the sale of oil produced and sold from the premises was allocated as follows: In the case of wells then producing the proceeds were allocated first to the "reasonable cost of the operation of said wells, excluding general overhead and administrative costs, and the amount of royalties paid", and the balance to a "creditors' fund". In the case of reconditioned or redrilled or deepened wells, the proceeds were allocated first to repayment of the cost of reconditioning, redrilling or deepening and to the cost of producing and operating same and payment of royalties and the balance allocated to the creditors' fund.

New wells drilled by the purchaser were divided into five classes according to daily production: wells producing less than 100 barrels, wells producing more than 100 and less than 200 barrels, wells producing more than 200 and less than 300 barrels, wells producing more than 300 and less than 350 barrels, wells producing 350 or more barrels of oil per day.

The agreement provided that the proceeds of said oil should be allocated first to paying the operating and maintenance costs and the royalties and thereafter should be distributed in varying percentages specified in the contract to the cost of drilling and to the creditors' fund and to the purchaser.

The contract also provided that in event of sale of the property by the Exeter Oil Company before full payment of all creditors' claims, the proceeds of the sale, less the costs of such sale, should be placed in the creditors' fund. It provided that the creditors' fund should be first distributed for payment of taxes, secured obligations (if not determined invalid), and preferred labor claims, and that after full payments of these claims 25 per cent of the fund was to be retained by the Exeter Oil Company and the remaining 75 per cent paid ratably to the unsecured creditors. The liability of the Exeter Oil Company to the creditors was limited to the properties acquired from the Interstate Oil Corporation. In the contract of sale between the Exeter Oil Company and appellee it was provided that creditors who did not sign an agreement of release were to be paid in the same manner as creditors signing such an agreement.

█ In so far as the objections of the alleged stockholders of the Interstate Oil Corporation is concerned, there is clearly no merit in the appellants' contentions. The statutory requirement with respect to price in the case of a private sale is that it shall be equal to at least two-thirds of the appraised value. 28 U.S.C.A. § 847. The appraised value of the property of the Interstate Oil Corporation was $177,108.24. At the time of the petition for order confirming the sale, filed April 29, 1938, 116 of the creditors of the Interstate Oil Corporation, holding claims aggregating $190,828.25, had executed the creditors' release. The Interstate Oil Corporation thus received under the contract an equivalent of value in excess of the appraised valuation of its properties.

██ As to the non-consenting creditors, it is claimed that the Exeter Oil Company actually pays nothing in consideration for the interests in the properties transferred to it. It is claimed that the $8,000 to be paid by the Exeter Oil Company would in all probability be due the Exeter Oil Company from the receiver when the transfer actually takes effect as a portion of the transferred assets because when the Exeter Oil

434

Company receives title to the real properties it will also receive the personal assets, including accounts receivable and including net earnings by the receiver from and after December 31, 1937. It is claimed that in substance the Exeter Oil Company pays nothing for the property but may retain one-fourth of the profits and in event of a sale of the property, is entitled to one-fourth of the sale price. It is claimed that the transaction is unfair to the non-consenting creditors in that they are forced to look to a third party for payment of their claims which party has had transferred to it the property of the original debtor with no lien impressed thereon for the benefit of such creditors.

The appellants claiming to be creditors in the case at bar make no claim to be secured creditors. It should be noted that under the contract between the Exeter Oil Company and the receiver, the Oil Company has assumed all debts of the Interstate Oil Corporation and has agreed to indemnify that company in respect to liability arising from debts or judgments rendered against the Interstate Oil Corporation. Non-assenting creditors are not required by the order of confirmation to accept the agreement offered them by the Exeter Oil Company. In regard to the claim of the appellants, however, that the Exeter Oil Company actually pays nothing for the contract of release, it should be noted that although the Exeter Oil Company receives its direct costs of operation from production on the properties it does not receive its overhead or administrative costs. Moreover, it agrees to operate the properties and, at its own cost, to make repairs on those properties needing such attention, and also to carry forward a five well drilling program.

The matter of confirming a sale of property in equity receivership lies in the sound discretion of the trial court. Stokes v. Williams, 3 Cir., 226 F. 148. As we have stated, the evidence before the trial court is not brought before this court. From the record before this court we cannot say there was an abuse of discretion, and there is no occasion for the exercise of our power to now cite the purchaser as a party to the appeal.

Appellants' contention that the trial court abused its discretion in refusing to allow appellants additional time within which to obtain a better offer is likewise without merit.

Appeal is dismissed for lack of an indispensable party on appeal.