**Gilbert W. JONES, Plaintiff,**

v.

**BANK OF AMERICA, N.A., a national banking association, Defendant.**

**Bank of America, N.A., a national banking association, Counterclaimant,**

v.

**Gilbert W. Jones, Counterdefendant.**

**No. CIV. 02–1757–PHX–SMM.**

United States District Court,
D. Arizona.

Dec. 9, 2003.

Najia M Kerrin, Esq, Jill K Osborne, Misty Dawn Guille, Kerrin & Osborne PC, Phoenix, AZ, for Plaintiff and Counter-Defendant.

Charles L Chester, Esq, Matthew Todd Clarke, Ryley Carlock & Applewhite PA, Phoenix, AZ, for Defendant and Counter-Claimant.

## MEMORANDUM OF DECISION AND ORDER

McNAMEE, Chief Judge.

Pending before this Court is Plaintiff's Motion for Summary Judgment and De-

fendant's Motion for Summary Judgment on all of Plaintiff's claims and on its Counterclaim for Declaratory Judgment [Doc. No. 3]. After reviewing the documents submitted by the parties, and hearing Oral Arguments on November 17, 2003 at 2:00 p.m., the court issues the following decision:

## BACKGROUND

Plaintiff was an employee of Defendant for approximately fifteen years. On January 3, 2000, Defendant granted Plaintiff an award of 10,200 shares of stock options pursuant to a Key Employee Stock Plan Nonqualified Stock Option Award Agreement ("KESOP" or "Agreement"). One third of the shares were to vest each year for three years. The Agreement granted Plaintiff an option to purchase shares of Defendant's Common Stock at option prices not less than the fair market value of shares of Common Stock at close of business on the date of grant. The Award certificate specified that the options would expire on January 3, 2010 (10 years from date of issue). The Award was also subject to cancellation in the event an employee was terminated from employment. In that case, the options would be cancelled *on the earlier of the expiration date or a preset cancellation date* depending on the reason for termination as follows:

| Reason for Termination | Cancellation Date |
|---|---|
| Retirement | Expiration Date on certificate |
| Death or Disability | 12 months from termination |
| For Cause | Termination date |
| All other terminations | 90 days from termination date |

The KESOP Agreement defines "retirement" as termination of employment after the employee has: (1) attained at least age 50; (2) completed a minimum of fifteen years of "vesting service" and (3) attained a combined age and years of "vesting service" equal to at least 75 (this formula is termed the Rule of 75). Plaintiff was also provided with a Fact Sheet, Prospectus, and vesting schedule when he received the award. According to the Fact sheet, an employee may exercise vested options while employed by Defendant, and in certain circumstances after employment ends. Those circumstances, stated above, include retirement, and "all other terminations." Those documents also define "retired" as having attained a combined age and years of "vesting service" equal to at least 75.

On September 8, 2000, Defendant made the decision initiate a "reduction in force." Also in September, Plaintiff received a stock status report showing the status of his options, and showing the expiration date of the award as January 3, 2010. On September 29, 2000 Plaintiff received notification that he was one of the employees to be terminated pursuant to the reduction in force. His last day was set for October 10, 2000.

Upon notification of the reduction in force, Plaintiff received a severance benefit package and a General Release and Settlement Agreement which he signed on November 4, 2000. The severance agreement provided Plaintiff with: 1) $54,000 supplemental severance pay; 2) a $5,000 payment in lieu of outplacement services; and 3) a salary severance benefit of $110,384.59. Plaintiff also signed a "release of claims" under which he waived, released and forever discharged Defendant from any claims, including for example, "claims arising from statements (written or oral) made or distributed or published by the Bank . . .," claims for any type of wages . . . separation or severance benefits."

What Plaintiff fails to understand is that under the "reduction in force" Plaintiff was not retired. Rather, he was terminated. However, in order to allow Plaintiff, and others selected for termination, to qualify for retirement benefits, they were provided a 12 month "bridge" which enabled persons within one year of retirement to receive company provided retirement benefits. Because Defendant has merged

with other companies several times, some employees are not subject to the Bank of America Rule of 75 plan. Defendant was initially classified as retirement eligible under a pre-merger company under which, he was only require to meet the "Rule of 70."[1] The Rule of 70 requires that a retiree have: 1) attained at least age 50; 2) completed at least 15 years of vesting service; and 3) attained a combined age and years of vesting service equal to at least 70. On Plaintiff's official termination date, October 10, 2001, he was 56 years old and was credited with 15.083 years of benefit service-thus surpassing the Rule of 70 requirement for benefits purposes.

On March 6, 2002, Plaintiff attempted to exercise and sell 2500 options granted under the KESOP but was told that his options had expired pursuant to the certificate. According to Defendant, Plaintiff was not retired as defined in the KESOP and therefore his termination was classified as "all other terminations" and subject to a 90 day cancellation period. As such, according to Defendant, Plaintiff's options were cancelled on January 8, 2002.

Plaintiff argues that he is retired as defined in Defendant's policies and that he received assurances from his superiors, Pat Fox, Donna Hill and Marila Abuan that his options would not expire until 2010. Therefore, Plaintiff filed suit alleging breach of contract, lost wages, breach of fiduciary duty, and negligent misrepresentation. He seeks compensation in an amount between $45,656.25 and the amount for which he would be able to sell 2500 shares upon the court's order, plus interest on the $45,656.25 at a legal rate of 10%, plus the value of the remaining 7700 options that he claims will not expire until January 3, 2010. In addition, Plaintiff seeks treble damages pursuant to Arizona's Wage Statutes, Arizona Revised Statutes § 23–350 *et seq.* in the amount of $136, 968.75.

Defendants removed the case to this Court and counterclaimed for Declaratory Judgment. Both parties have now submitted Motions for Summary Judgment.

## STANDARD OF REVIEW

■ A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Jesinger,* 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Jesinger,* 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

---

**1.** While there is no written "Rule of 70" the parties agree that Plaintiff subject to the Rule of 70 for retirement benefit purposes.

trial." *Id.* at 322, 106 S.Ct. 2548; *see Citadel Holding Corp. v. Roven,* 26 F.3d 960, 964 (9th Cir.1994). The moving party need not disprove matters on which the opponent has the burden of proof. at trial. *See Celotex,* 477 U.S. at 317, 106 S.Ct. 2548. The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir.1995).

## DISCUSSION

### I. Plaintiff's Motion for Summary Judgment

The primary dispute in this case concerns the definition of the word "retirement" and whether Plaintiff is "retired" for purposes of the Agreement and whether termination pursuant to a reduction in force satisfies the "retirement" requirement under the Agreement. Plaintiff contends that the Agreement is ambiguous because the definition of "retirement" is subject to two different reasonable interpretations between the Defendant's retirement policies and the KESOP award. As such, the court should interpret the ambiguity against the Defendants. *See Darner Motor Sales v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 400, 682 P.2d 388, 405 (1984) ("Arizona courts have always interpreted ambiguous terms against the drafter."). Defendants contend that the language is straight forward and that it is clear that Plaintiff was not "retired" for purposes of the Agreement.

### A. Breach of Contract

Plaintiff claims that by refusing to honor his stock options, Defendant breached the KESOP Award Agreement. He argues that the definition of "retired" is ambiguous, and asks the court to allow him to exercise the options or in the alternative to receive the value of those options.

 When interpreting a contract, the court must avoid the temptation to automatically interpret the contract language as the court understands the words. It is fundamental that a court attempt to "ascertain and give effect to the intention of the parties at the time the contract was made if at all possible," and in light of all the surrounding circumstances. *Taylor v. State Farm Mut. Auto. Ins. Co.,* 175 Ariz. 148, 153, 854 P.2d 1134, 1139 (1993); RESTATEMENT (SECOND) CONTRACTS § 202. Moreover, ambiguous terms in a contract are to be construed against the drafter. *Darner Motor Sales, Inc.,* 140 Ariz. at 400, 682 P.2d at 405, *citing Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127 (1982); *Germania Fire Ins. Co. v. Bally,* 19 Ariz. 580, 591, 173 P. 1052, 1057 (1918). But, the fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous. *Boudreau v. Borg–Warner Acceptance Corp.,* 616 F.2d 1077, 1079 (9th Cir.1980), *citing Grossman v. Hatley,* 21 Ariz.App. 581, 522 P.2d 46 (1974).

 At issue in this case are the "Settlement Agreement," the Bridging Policy and the KESOP award. Each document contains the same definition of "retired." Under the Settlement Agreement, a person may retire after meeting or surpassing the requirements of the Rule of 75. Under the KESOP, a person is considered retired after meeting or surpassing the requirements of the Rule of 75. Under the Bridging Policy, Plaintiff was given a 12 month "bridge to meet the Rule of 75." The Bridging Policy also provides a bridge for "former Bank of America associates" [such as Plaintiff] grandfathered under prior programs, "specifically the rule of 55

plus 15 years of benefit service (termed the "Rule of 70" by the parties)." Thus, Plaintiff was entitled to a bridge to meet the Rule of 70 for purposes of receiving retirement benefits but was not considered "retired."

Plaintiff contends that the "bridging policy," Settlement Agreement, and assurances from supervisors that he would be considered retired although not meeting the Rule of 75 requirements, creates an ambiguity. According to Plaintiff, the bridging policy and Settlement Agreement "changed the terms of the KESOP agreement" such that he was considered retired if he met the Rule of 70. However, the bridging policy is silent on the KESOP, and the Settlement Agreement plainly states "nothing in this Agreement shall impair, diminish or interfere with any rights, privileges or benefits related to the Awards, and/or the Plans pursuant to which the Awards were issued, of any . . . stock options."

Looking at the plain language of the Settlement Agreement and the KESOP, Plaintiff's argument is without merit. The Settlement Agreement includes a portion entitled "effect of your separation on stock plans and other benefits" that provides "unless you are retiring, you will have 90 calendar days to exercise any vested options . . . If you meet the definition of retirement *as defined in your award agreement*, your outstanding options will become fully vested at termination."

The definition of "retired" under the KESOP plainly states that the employee must meet the Rule of 75 requirement. Plaintiff was "bridged" up to meet the Rule of 70 requirement for purposes of receiving retirement benefits after the reduction in force. However, the KESOP award is not a retirement benefit, rather it was a benefit of employment. In furtherance of the proposition that KESOP is not a retirement benefit is Plaintiff's own Appendix 2 to his Statement of Facts in Support of his Response to Defendant's Motion for Summary Judgment. Appendix 2 is an informational pamphlet outlining Defendant's retirement benefits. That document includes as retirement benefits, Pension Plan benefits, 401(k) benefits, continued health care coverage, life insurance, and special rates on certain banking services. Defendant's retirement benefits do not include stock options.

■ In September 2000, Plaintiff received a "stock status report" showing his KESOP option to expire on January 3, 2010. [See Exh. 5] According to Plaintiff, this is proof that the options would remain open until that date. However, as the KESOP agreement provides, the expiration date is irrelevant if the Plaintiff's employment is terminated. In the event of termination, the right to exercise options under the KESOP is limited in duration depending upon the reason for termination. In this case, Plaintiff did not meet the Rule of 75 standard as provided in both the severance agreement and the KESOP, and therefore Plaintiff's severance was classified as "all other terminations." Accordingly, he had 90 days after termination, which was until January 4, 2001, within which to exercise his stock options.

■ According to Plaintiff, he accepted the severance package (or as he terms it, the "offer of early retirement") only after receiving repeated assurances that he would be "retired" for KESOP purposes and that his options would expire on January 3, 2010. Plaintiff presents a handwritten note to himself that he spoke with Fox, Hill, and Abuan who offered their assurances. Defendant's provided as evidence, affidavits of Fox, Hill, and Abuan that none of them assured Plaintiff that he would be considered "retired" for KESOP purposes. This conflicting evidence pres-

ents a disputed fact in this case. However, it is not a material fact because regardless of what Fox, Hill and/or Abuan told or did not tell Plaintiff, he is still bound by the terms of the KESOP. The KESOP, Prospectus, Fact Sheet, and Vesting Schedule are clear as to the terms under which Plaintiff could have exercised his options, irrespective of any information given him by Fox, Hill, and/or Abuan.

Defendant also contends that Plaintiff was not "offered" early retirement, rather he was selected for termination pursuant to a reduction in force. As such, there was nothing to either accept or reject. Plaintiff was terminated as part of a reduction in force. Defendant "bridged" his retirement date up one year so that he could receive "retirement benefits" under the company's former retirement plan (the Rule of 70), and he was offered a severance package which he signed, and accepted monetary payment. The severance package did not include stock options.

For purposes of Summary Judgment the pleadings and supporting documents, viewed in the light most favorable to Plaintiff, show no genuine issue as to any material fact. Even if the Court considers the surrounding circumstances as requested by Plaintiffs, it is undisputed that the Plaintiff was not retired for KESOP purposes.

The material facts are that Plaintiff was retired for purposes of the Defendant's retirement plan, but not retired as defined by the KESOP. The language of the KESOP is not ambiguous and clearly states that "retired" means the employee qualifies under the Rule of 75. Even with the extra one year "bridge" given by Defendant, Plaintiff did not meet the Rule of 75 requirements. Rather, he met the Rule of 70 requirements necessary for him to receive retirement benefits after his termination.

Plaintiff makes unsupported allegations of ambiguity. That Plaintiff thinks the terms of the KESOP and other documents is ambiguous does not make it so. He does not "set forth specific facts showing there is a genuine issue for trial." As such, Plaintiff is not entitled to Summary Judgment on the breach of contract issue.

### b. Breach of Fiduciary Duty

█ Plaintiff alleges that Defendant owed him a duty to disclose that the KESOP expiration date was not as stated on the face of the award agreement. Plaintiff argues that Defendant repeatedly provided inaccurate or intentionally misleading information regarding his status as "retired" for KESOP purposes and that as a result, he was induced into accepting early retirement. Had he known that he would lose his options, he would not have accepted the early retirement but would have remained employed long enough for all of his options to vest. Other than unsubstantiated allegations, Plaintiff presents no proof that Defendant owed it a fiduciary duty, no proof that Defendant intentionally (or otherwise) offered inaccurate information and no proof that he could have remained employed.

Defendant argues that it made no inaccurate or intentionally misleading statements to Plaintiff and that the documents are clear that he was not retired for purposes of the KESOP. Plaintiff received $169,384.55 as provided in the severance plan and Settlement Agreement. While Plaintiff had the option to reject or accept the terms of that agreement, he did not retain the option to remain employed. He was not offered early retirement. He was terminated due to a reduction in force. Therefore, he would not have been able to retain his employment any longer, and the remaining 2/3 his options would remain unvested.

Although the parties dispute whether Plaintiff received misleading information, the only evidence supports that he did not. Plaintiff failed to provide sufficient facts to establish the existence of an element essential to his case on which he bears the burden of proof at trial. As such, Summary Judgement may not be awarded in Plaintiff's favor.

### c. Negligent Misrepresentation

■■■ The RESTATEMENT (SECOND) TORTS § 522(1) provides:

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Plaintiff argues that Defendant had a duty to exercise reasonable care in making representations about presently ascertainable facts. *See Arizona Title v. O'Malley Lumber Co.*, 484 P.2d 639, 14 Ariz.App. 486 (Ariz.Ct.App.1971). He argues that Defendant repeatedly advised him regarding the KESOP and failed to exercise reasonable care and competence in communicating requested information to Plaintiff. As a result of Plaintiff's reliance upon the false information, Plaintiff suffered pecuniary loss. It is true that Defendant must exercise reasonable care when ascertaining the facts of Plaintiff's retirement. However, Defendant denies making any statements or representations to Plaintiff and Plaintiff provides only an unauthenticated handwritten note to himself that it did. Plaintiff merely states that Defendant has a duty, but fails to provide specifically how Defendant breached that duty and how his reliance on the allegedly received information was "reasonable."

Defendant argues, and provides affidavits as evidence, that it did not advise Plaintiff regarding the KESOP, and that routine practice is to advise employees to contact the Stock Option Committee of the Board of Directors for stock option related questions. Therefore, according to Defendant, there were no assurances given regarding the KESOP and therefore, any reliance was not reasonable under the circumstances.

Plaintiff asks for summary judgment on this issue, claiming that there is no issue of material fact regarding Defendant's negligent misrepresentations. Plaintiff, again however, failed to show sufficient facts to establish the existence of an element essential to his case, and on which he bears the burden of proof at trial. As such, Summary Judgement may not be awarded in Plaintiff's favor.

## II. Defendant's Motion for Summary Judgment on Defendant's Motion for Declaratory Judgment

### A. Breach of Contract

Defendant's Motion for Summary Judgment makes the same arguments as its response to Plaintiff's Motion for Summary Judgment. Defendant argues that the contract is not ambiguous and therefore the court should not supply a different meaning. Defendant argues that the "expiration date" never changed and therefore the "specific terms added" by Defendant to fill in the date on the prewritten KESOP agreement did not trump the general language of the agreement as Plaintiff contends. The expiration date was constant, subject to change only if the employee was terminated. In the event of termination, the options did not expire, but were cancelled depending on the reason for termination. Because the agreement is not subject to "two different and reasonable interpretations" it should be interpreted as written. And as written, the Prospectus,

Fact Sheet, Vesting Schedule, and KESOP certificate are clear. Options expire no more than 10 years from date of grant, unless the employee is terminated. If the employee is terminated under the Rule of 75, the options will be cancelled on Jan. 3, 2003 as stated on the certificate, if the employee is terminated for "all other terminations" the employee has 90 days within which to exercise his options. Failure to exercise within that time frame results in cancellation of the options.

The Court agrees with Defendant. Plaintiff provides no evidence sufficient to contradict the unambiguous contractual provisions, nor sufficient to rebut Defendant's arguments. While it may be unfortunate that Plaintiff did not exercise his options within the 90 days allowed under the KESOP, there are no issues of material fact in dispute and Defendant's Motion for Summary Judgment on the Breach of Contract issue must be granted.

**B. Negligent Misrepresentation**

As discussed above, Plaintiff's Motion for Summary Judgment on the Negligent Misrepresentation claim is unsupported. On Defendant's Motion, it will bear the burden. Defendant's argue that any reliance by Plaintiff was unreasonable. Plaintiff argues that Defendant's employees Fox, Hill and Abuan gave assurances to him that he was retired for purposes of the KESOP, that he relied on those statements when making the decision to accept retirement, and that such reliance damaged him in an amount equal to the value of his stock options.

Defendant provided affidavits of Fox, Hill and Abuan that they did not provide Plaintiff with false or misleading information and that it is their routine practice to direct stock option related questions to the Stock Option Committee of the Board of Directors for information. Furthermore, Defendant argues that Fox, Hill and Abuan are not members of the Stock Option Committee, were not authorized to interpret or administer the KESOP, and that Plaintiff knew they were not authorized to interpret or administer the KESOP based on information contained in the Prospectus provided Plaintiff.

Based on the evidence presented there is no question of material fact as to this issue. Therefore, summary judgment is appropriate.

**C. Breach of Fiduciary Duty**

Plaintiff complains that the language of the KESOP is ambiguous and that Defendant did not disclose his rights and obligations under the Agreement. As discussed above, the KESOP, Prospectus, Fact Sheet and Vesting Schedule are clear that for "all other terminations" an employee would have 90 days within which to exercise his or her stock options. The agreement is also clear that for purposes of the KESOP, retirement is determined based on the Rule of 75. Defendant argues that even if Plaintiff were not clear as to his retirement date, the Prospectus contained a provision directing employees who to contact for additional information. Therefore there was no breach of fiduciary duty. The Court agrees with Defendant that it did not breach any fiduciary duties and will grant Summary Judgment on that issue.

**D. Waiver**

Finally, Defendant argues that the Settlement Agreement signed by Plaintiff precludes him from prevailing in this lawsuit. Because the Court finds in favor of the Defendant on its Motion for Summary Judgment, there is no need to address the issue of waiver. Whether Plaintiff's claims have been waived is moot given that his claims have been summarily decided against him.

## CONCLUSION

While Plaintiff's situation is sympathetic, it does not rise to the level of creating a question of fact in light of the clear and unequivocal language of the KESOP, Settlement Agreement, Prospectus, Fact Sheet, and Vesting Schedule. The KESOP defined retired or retirement based upon the Rule of 75. Retirement benefits for certain employees selected for termination under the reduction in force are determined based on the Defendant's former policy, the Rule of 70. Clearly Plaintiff did not realize that he was not retired for purposes of the KESOP. However, clearly he had numerous opportunities to discover that information and was directed by Defendant to the appropriate authorities on the KESOP and its requirements. Defendant's did not breach any contract with Plaintiff, did not supply misinformation (intentionally or otherwise) to Plaintiff, and did not breach any fiduciary duties owed Plaintiff. Plaintiff was entitled to exercise his vested options within 90 days of termination from employment. He did not do so and lost the right to exercise those options in the future pursuant to the Agreements between the parties. As such, Plaintiff is not entitled to relief.

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Counterclaim for Declaratory Judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** on the following issues: Breach of Contract, Breach of Fiduciary Duty, Negligent Misrepresentation. Defendant's Motion for Summary Judgment

on the claim of Waiver or Estoppel is **DENIED** as moot.