
NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: <br> ANDREA GROVES, <br><br>          Debtor. | BAP No. AZ-22-1002-LBT <br><br> Bk. No. 2:18-bk-14761-BKM |
| A&S LENDING, LLC, <br>          Appellant, <br> v. <br> ANDREA GROVES, <br>          Appellee. | Adv. No. 2:19-ap-00183-BKM <br><br> **MEMORANDUM*** |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Brenda K. Martin, Bankruptcy Judge, Presiding

Before: LAFFERTY, BRAND, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Creditor A&S Lending, LLC ("A&S") appeals the bankruptcy court's declaratory judgment determining the extent of A&S's liens on real properties jointly owned by chapter 13[1] debtor Andrea Groves and her business, A & D Property Consultants, LLC ("A & D"). The deed of trust at

---

       * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

      [1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Rule" references are the Federal Rules of

1

issue granted a security interest in an undivided one-half interest in each parcel of real property, but A&S argued that this was an error and that the parties intended to encumber the entirety of both properties. After a two-day trial, the bankruptcy court found no mutual mistake warranting reformation of the deed of trust (except for an agreed correction to the signature block) and entered judgment in favor of Debtor.

We AFFIRM.

## FACTS

### A.    Prepetition Events

Debtor, a licensed real estate broker, and A & D, Debtor's wholly-owned LLC, were in the property-flipping business, i.e., they purchased properties, improved them, and sold them for a profit, paying off the financing in the process. Before the transaction at issue here, they had successfully completed seven projects using financing from A&S's predecessor, Merchants Funding AZ, LLC ("Merchants"). In some of those transactions, including the seventh, Merchants had required Debtor to pledge her personal residence (the "Residence") as additional collateral. For the seventh transaction—a loan for the purchase and improvement of property on State Avenue in Phoenix (the "State Avenue Loan")—title to the investment property was taken by A & D only, and the deed of trust indicated that the grantors were A & D as to parcel A-1, the investment property, and Debtor as to parcel A-2, the Residence.

Bankruptcy Procedure.

In 2017, Debtor contacted Merchants about financing an eighth project, the purchase and remodel of real property located on Rancho Drive in Phoenix (the "Rancho Property"). Merchants agreed to loan Debtor and A & D a total of $326,949 at 10.5% interest, due in full in twelve months (March 31, 2018).[2] Of the amount loaned, $109,244 was designated to be deposited into an account from which Debtor could make draws to pay for improvements. As part of the transaction, Debtor executed an agreement granting Merchants a security interest in the improvement account.

The documentation required for the Rancho Property transaction differed from Debtor's previous transactions with Merchants in that the deed granting title to the Rancho Property granted it to Debtor and A & D jointly, and Debtor was presented at closing with a warranty deed that transferred the Residence from Debtor individually to Debtor and A & D as joint tenants.[3] The upshot was that Debtor and A & D each ended up holding a one-half interest in both the Rancho Property and the Residence. The deed of trust ("DOT"), however, contained virtually identical recital language as that shown on the deed of trust for the State Avenue Loan.

---

[2] Merchants later agreed to an extension of the due date to June 28, 2018.

[3] The bankruptcy court stated in its findings that Debtor was required to sign two "quitclaim" deeds, one of which transferred title of the Rancho Property from A & D to herself and A & D jointly. This was not accurate; the recorded warranty deed in the record reflects that the deed transferring title of the Rancho Property to Debtor and A & D jointly was executed by Olivia K. Bateman, successor trustee of the Sheila K. Bateman Trust dated February 8, 2006, the seller of the Rancho Property.

Specifically, the initial paragraph of the DOT reads in pertinent part: "THIS DEED OF TRUST is made as of April 6, 2017, between A&D PROPERTY CONSULTANTS LLC, AN ARIZONA LIMITED LIABILITY COMPANY (AS TO EXHIBIT A-1) AND ANDREA GROVES, AN UNMARRIED WOMAN (AS TO EXHIBIT A-2) [defined as "Grantor"] . . . for the benefit of MERCHANTS FUNDING AZ, LLC . . . ." Exhibit A-1 was the legal description for the Rancho Property, and Exhibit A-2 was the legal description for the Residence. The granting language states, in pertinent part, "Grantor . . . hereby grants and conveys . . . the following property . . . The real property described on Exhibit A-1 and Exhibit A-2 . . . ." The DOT thus purported to encumber A & D's interest in the Rancho Property and Debtor's interest in the Residence. As a result, under the DOT, the loan was secured by an undivided one-half interest in each property rather than the full interests in those properties, as had been required for the State Avenue Loan.

Shortly after the purchase of the Rancho Property closed, the DOT was assigned to A&S, and Merchants became the servicer on the loan. Debtor and A & D later defaulted on the loan, and Debtor filed a chapter 13 petition in December 2018.

B.    **Bankruptcy Events**

After A&S acquired the loan and DOT from Merchants, it discovered what it described as errors in the loan documentation. A&S took the position that the parties had intended for Merchants to acquire a security

4

interest in the entirety of both properties, and that the DOT erroneously provided for the grant of only a one-half interest in each property. In response, Debtor filed an adversary proceeding seeking a declaratory judgment. A&S filed a counterclaim against Debtor and a crossclaim against A & D for declaratory relief and reformation. During the litigation, Debtor and A & D agreed that the signature block on the DOT erroneously referred only to the Rancho Property and not to the Residence and so agreed that reformation of the signature block was appropriate.[4]

At trial, Debtor testified, among other things, that she did not recall being informed what the specific collateral would be for the loan and that the first time she saw the warranty deed was at closing. She testified that she signed the deed transferring her interest in the Residence to herself and A & D jointly because the title officer told her that it was required for closing. The court also heard testimony from Robert "Bo" Seamands, the loan officer at Merchants who had been involved in the loan transactions for both the Rancho Property and the State Avenue Loan. The only specific conversation Mr. Seamands recalled having with Debtor was the initial one regarding the Rancho Property loan in which she stated, "let's do it again," with reference to doing another loan like the State Avenue Loan. Mr. Seamands did not recall telling Debtor what the collateral would be for the loan, but he testified that Merchants would never have made a loan

---

[4] The signature block designated Debtor and A & D as grantors "AS TO EXHIBIT A-1" and contained no mention of Exhibit A-2.

that was secured by only a one-half interest in the collateral and that Debtor "would have had to" agree that she would utilize the equity in both properties to secure the loan. He also testified that he was not involved with preparing or reviewing the documentation for the loan.

After hearing closing arguments, the bankruptcy court ruled orally on the record, denying A&S's request to reform the DOT, except for the error in the signature block. The court found that the evidence did not support a finding that all parties intended that the full value of both properties would be collateral for the loan, thus there was no mutual mistake as required for reformation. The court found credible Debtor's testimony that she did not know the specific terms of the financing until the day she reviewed the documents and agreed to sign them. The bankruptcy court thereafter entered judgment declaring that A&S's lien attached to A & D's undivided interest in the Rancho Property and Debtor's undivided interest in the Residence; reforming the signature block on the DOT as agreed by the parties; and dismissing with prejudice A&S's counterclaims. The bankruptcy court also declared that Debtor and A & D were the prevailing parties and were entitled to request attorneys' fees.[5] A&S timely appealed.

---

[5] Debtor and A & D subsequently filed fee applications. On July 1, 2022, the bankruptcy court entered a minute order finding Debtor and A & D to be the prevailing parties. It awarded Debtor $109,981.80 in fees and $673.20 in costs, and it awarded A & D $5,355 in fees.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(K). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in granting judgment to Debtor on her claim for declaratory relief and dismissing A&S's counterclaim and crossclaim with prejudice?

## STANDARDS OF REVIEW

We review legal issues de novo and the bankruptcy court's factual findings under a clearly erroneous standard. *Village Nurseries v. Gould (In re Baldwin Builders)*, 232 B.R. 406, 410 (9th Cir. BAP 1999). De novo review means that we review the matter anew, as if the bankruptcy court had not previously decided it. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014). A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to the bankruptcy court's findings, because the bankruptcy court, as the trier of fact, had the opportunity to note 'variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'" *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)).

## DISCUSSION

**A.   This appeal will not be dismissed for failure to name A & D as an appellee.**

As a threshold matter, Debtor argues that this appeal is "fatally defective" because A & D is not named as an appellee, and it is an indispensable party. Debtor argues that an appeal that fails to name an indispensable party must be dismissed, citing *Interstate Oil Co. v. Gormley*, 105 F.2d 431 (9th Cir. 1939). In that case, the court of appeals dismissed an appeal of an order confirming a sale of property by a receiver because the appellant failed to name the purchaser of the property as an appellee. *Id.* at 434. But that case does not hold that an appeal must always be dismissed for failure to name an appellee. Rather, the appellate court has the discretion to grant a timely application to add an appellee if the circumstances warrant. *Id.* at 432. And more recent Ninth Circuit authority makes clear that failure to name an appellee in a notice of appeal is not a jurisdictional bar to an appeal. *West v. United States*, 853 F.3d 520, 523 (9th Cir. 2017).

Rule 8003(a)(2) provides, "[a]n appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the district court or BAP to act as it considers appropriate, including dismissing the appeal." Accordingly, we have discretion to determine whether this appeal should be dismissed for failure to name A & D as an appellee. We decline to do so here.

8

Here, the notice of appeal complies with Rule 8003(a)(3). Although it does not name A & D as an appellee, it was served on Ronald Ellett, who represented **both** Debtor and A & D in the adversary proceeding. Mr. Ellett articulated no prejudice resulting from the failure to name A & D in the notice of appeal. Accordingly, the request for dismissal on this ground is denied.[6]

**B.     The bankruptcy court did not err in entering judgment in favor of Debtor and A & D and dismissing A&S's counterclaim and crossclaim.**

A&S's theory is that the language of the initial paragraph of the DOT was erroneously "cut and pasted" from the deed of trust for the State Avenue Loan. It contends that Debtor had to have known there was a mistake in the loan documentation because, as an experienced real estate broker and investor, she should have known that no real estate lender would make a loan such as the one at issue here, where the collateral was insufficient to secure at least the full loan amount.

"Reformation is an equitable remedy available to correct a deed to reflect the parties' intent." *In re Est. of Ganoni*, 357 P.3d 828, 831 (Ariz. Ct. App. 2015) (citing *Korrick v. Tuller*, 27 P.2d 529[, 530] (Ariz. 1933); additional citation omitted). Reformation is dependent on a mutual

---

[6] Moreover, because we are affirming on the merits, we need not require A&S to join A & D in this appeal. *See Sewell v. MGF Funding, Inc. (In re Sewell)*, 345 B.R. 174, 178 n.7 (9th Cir. BAP 2006) (noting that it would not require appellant to join a party as an appellee, finding no prejudice to the omitted party because the Panel was not reversing the bankruptcy court's order).

mistake. *United Bank of Ariz. v. Ashland Dev. Corp.*, 792 P.2d 775, 778 (Ariz. Ct. App. 1990). The mutual mistake must be established by "clear, convincing and satisfactory evidence that a definite intention on which the minds of the parties had met preexisted the written instrument and that the mistake occurred in its execution." *City of Scottsdale v. Burke*, 504 P.2d 552, 555 (Ariz. Ct. App. 1972) (citations and internal quotations omitted). A unilateral mistake by one party where the other party has engaged in fraud or inequitable conduct will also support reformation to avoid an inequitable result. *Jeffries v. First Fed. Sav. & Loan Ass'n of Phoenix*, 489 P.2d 1209, 1212 (Ariz. Ct. App. 1971).

Based on the foregoing authorities, A&S, as the party seeking reformation, had the burden to show by clear, convincing, and satisfactory evidence that the language of the DOT was due to a mutual mistake or that Debtor engaged in fraud or inequitable conduct. A&S did not allege or provide evidence that there was any fraud or inequitable conduct on Debtor's part, although A&D's counsel attempted to raise the issue in his closing argument.

The bankruptcy court found that the evidence did not establish a mutual mistake by clear and convincing evidence. It noted that there was little testimony regarding the terms of the loan and that the Debtor's testimony, which the court found credible, established that: (1) there was no discussion with Mr. Seamands or anyone else at Merchants about the specifics of the deal; (2) Debtor inquired about the deeds and was told by

the title company that they were necessary to complete the deal; and (3) Debtor understood that the execution of the deeds would result in Debtor and A & D each owning a one-half interest in each property, although she did not necessarily understand why the transaction was structured that way. Based on these findings, the court concluded that the evidence was not clear and convincing that Debtor had mistakenly signed the loan documents believing she was granting a lien on the full interests in each property.

The bankruptcy court further found that Mr. Seamands' testimony made clear that "he had no specific recollection of walking through the details of the Rancho Drive loan with Groves prior to the signing." Instead, his responses were that he "would have" or "must have" discussed the collateral and terms with Debtor.

The bankruptcy court also rejected A&S's argument that the loan documents were ambiguous. As the court noted, whether a contract is ambiguous is a question of law, and any ambiguity is subject to a factual determination concerning the parties' intent to be resolved by the trier of fact. *The Hartford v. Indus. Comm'n of Ariz.*, 870 P.2d 1202, 1207 (Ariz. Ct. App. 1994). "Language in a contract is ambiguous only when it can reasonably be construed to have more than one meaning." *In re Est. of Lamparella*, 109 P.3d 959, 963 (Ariz. Ct. App. 2005) (citation omitted). Any ambiguity in a contract is construed against the drafter. *Jones v. Bank of Am., N.A.*, 311 F. Supp. 2d 828, 833 (D. Ariz. 2003). The bankruptcy court found

11

that the language of the DOT could be read consistently with the granting of the interest each grantor held in each property, noting that the term "Grantor" was defined in the introductory paragraph as A & D as to Exhibit 1 and Debtor as to Exhibit 2. The court also stated that to the extent there was any ambiguity, it would be construed against Merchants, which prepared or directed the preparation of the documents.

A review of the trial transcript and exhibits, along with appropriate deference to the bankruptcy court's credibility finding, leads to the conclusion that the court's factual findings were logical, plausible, and supported by the record. There was no evidence that Debtor believed she was required to grant the full interests in both properties as security for the loan and or that she knew the DOT contained erroneous language. According to her testimony, her concern at closing was with getting the transaction finalized, and she had no reason to question the documents presented to her by the title company. And the bankruptcy court correctly found that Mr. Seamands' testimony was not sufficient to establish that Debtor knew there was a mistake in the documentation. He simply had no specific recollection of discussing the collateral with Debtor during the loan approval process.[7]

Notwithstanding this record, A&S argues that the bankruptcy court's findings were not supported by the evidence. Despite acknowledging the

---

[7] Debtor asserts that Mr. Seamands' testimony was not credible, but the bankruptcy court made no credibility finding as to Mr. Seamands.

deference afforded to credibility findings, A&S nevertheless attacks Debtor's credibility, pointing to Debtor's extensive real estate experience and the fact that previous transactions with Merchants had required the pledge of the full value of both the investment property and the Residence.[8] A&S contends that most of Debtor's testimony regarding the transaction is not believable, i.e., that she never discussed the loan terms with Mr. Seamands and did not know what security was required. A&S also complains that Debtor did not disclose her "hidden belief" to Merchants before signing the closing documents and alleges that the decision of how to take title "must have been hers." A&S contends that Mr. Seamand's testimony established that Debtor agreed to secure the loan with the full value of both properties. But the testimony A&S relies on was Mr. Seamand's statements that the collateral "would have been discussed," and Debtor "would have had to" agree to utilize all the equity in both properties to secure the loan.

A&S fails to acknowledge that, to show mutual mistake, it had to have shown—**by clear and convincing evidence**—that both parties understood the transaction to require the pledge of the full value of each property as collateral for the loan. But the testimony did not establish that

---

[8] A&S argues that "[i]t is not so much a matter of witness credibility as it is making sure that the overwhelming evidence is honored and that justice is done." It cites *In re Est. of Gillespie*, 903 P.2d 590, 592 (Ariz. 1995). But that case involved summary judgment; there were no disputed material facts and no credibility finding was made.

Debtor knew this was a requirement, i.e., that she knew the DOT language was incorrect.

A&S also argues that the bankruptcy court's findings were not supported by applicable law. It argues that the preamble paragraph of the DOT cannot be considered as part of the contract between the parties and that paragraph 1 of the DOT should control. But the DOT's introductory paragraph was not merely a recital. Instead, it defined the terms that were used in the granting language. As such, those definitions were incorporated into the operative language.

A&S further argues that the preamble of the DOT is ambiguous because it is inconsistent with the granting paragraph, the signature block, and other loan documents. But it supports this argument by attacking Debtor's credibility. It also fails to acknowledge that, to the extent there is any ambiguity, it is construed against the drafter. *Jones*, 311 F. Supp. 2d at 833.

A&S has not persuaded us that the bankruptcy court erred in its findings or conclusions.

Because we conclude that the bankruptcy court's decision was correct, we need not address Debtor's additional arguments.[9]

---

[9] Debtor argues that: (1) A&S is bound by a letter agreement with Merchants to extend the due date of the loan, which provided that the parties waived all claims, defenses, and counterclaims relating to the note and DOT; and (2) any postpetition reformation of the DOT would be avoidable under the trustee's strong-arm powers. The bankruptcy court declined to rule on either issue.

## C.    Attorneys' Fees

Both parties to this appeal argue that they are entitled to attorneys' fees incurred in this appeal, citing Arizona Revised Statutes § 12-341.01, which provides, in relevant part, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." But inserting such a request into an appellate brief is inadequate and premature. None of the relevant issues have been briefed, nor has any party submitted time sheets. Accordingly, we express no opinion on the fee requests.

## CONCLUSION

For the reasons explained above, the bankruptcy court did not err in entering judgment in favor of Debtor and A & D on their claim for declaratory relief and against A&S on its counterclaim and crossclaim.

We AFFIRM.